UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUNRISE FOOD TRADING, INC.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>MEDITERRANEAN SHIPPING COMPANY (USA) INC.,<br><br>    *Defendant*. | Case No. 1:22-cv-5689<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sunrise Food Trading, Inc. ("Sunrise" or "Plaintiff"), by its undersigned attorneys, for its Complaint against Defendant Mediterranean Shipping Company (USA) Inc. ("MSC" or "Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1. Sunrise brings this action under the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, and for breach of contract against MSC due to the destruction of a shipment of frozen illex squid meant for consumption (the "Products") that was purchased by Sunrise from a nonparty for $133,100.00. Instead, MSC delivered two truckloads of melted, rotting squid, which poured out of MSC's delivery trucks as soon as they were opened, causing no less than $169,833.43 in damages to Sunrise. Despite acknowledging the destruction of the Products while in MSC's custody, MSC has refused to reimburse Sunrise for its losses. Accordingly, Sunrise brings this action against MSC for its losses resulting from MSC's destruction of the Products, and for related damages and interest.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity between parties and the amount in controversy exceeds

$75,000.  This Court additionally has subject matter jurisdiction pursuant to 46 U.S.C. § 30701.

3.  This Court has personal jurisdiction over MSC because, upon information and belief, Defendant is organized under the laws of and maintains its principal places of business, in the State of New York.  MSC has also entered transacted business with Sunrise in the State, MSC's activities were purposeful, and there is a substantial relationship between the transactions with Sunrise and the claims asserted herein.

4.  Venue is proper in this District pursuant to 28 U.S.C. §1391 because MSC's principal place of business is in New York, New York.

## THE PARTIES

5.  Plaintiff Sunrise Food Trading, Inc. is a New Jersey corporation located at 163 Washington Valley Road, Unit 103, Warren, New Jersey 07059, engaged in the business of, among other things, distributing frozen seafood and sushi products.

6.  Upon information and belief, Defendant Mediterranean Shipping Company (USA) Inc. is a New York corporation located at 420 5th Avenue, New York, New York 10018, engaged in the business of global shipping.

## FACTS

7.  In or before April 2021, Sunrise agreed to purchase 44,000 kilograms of seafrozen illex squid from nonparty Iberconsa De Congelados, S.A.U. ("Iberconsa") for $133,100.00.  A copy of the invoice for this sale, dated April 28, 2021, is attached as **Exhibit A**.

8.  Sunrise planned to sell the Products to two buyers in Illinois for a total of $156,963.84, as reflected in the invoices dated July 12, 2021 attached as **Exhibit B**.

9.  Upon information and belief, MSC was aware that Sunrise planned to sell the Products at a significant profit.

10. On or about April 12, 2021, Sunrise, Iberconsa, and MSC entered into an agreement in which MSC agreed to act as the carrier of the Products, loading the Products from Iberconsa in Buenos Aires, Argentina, and delivering the Products to Sunrise in Chicago, Illinois.

11. On April 12, 2021, MSC issued a Bill of Lading setting forth the terms and conditions of its agreement with Sunrise to serve as carrier of the Products. The Bill of Lading incorporates by reference terms and conditions located on MSC's website, which can be found at https://www.msc.com/en/carrier-terms. A copy of the Bill of Lading with Terms and Conditions is attached as **Exhibit C**.

12. Upon information and belief, MSC loaded the Products in Argentina, and carried them by sea to Norfolk, Virginia, following which MSC carried the Products by land to the ultimate Chicago, Illinois destination.

13. MSC charged Sunrise $2,714.00 for the final land leg of the delivery from Norfolk to Chicago, as reflected in the invoice attached as **Exhibit D**.

14. MSC delivered the two shipments of the Products to the Chicago destination on approximately July 10 and July 12, 2021, respectively. When opened, both containers of the Products immediately spewed forth brown fluid with a foul odor. Once the fluid had ceased flowing, the individuals who opened the containers investigated the contents and found that the Products had fully melted and rotted while in the custody of MSC. Video and photographs of the opening of the containers were taken, including the below images, the first of which is a still image from a video where liquefied squid pours from a truck labeled "MSC":

32740/000/4089380.2



4





5



15. On July 10, 2021, after the first ruined shipment had arrived, Sunrise emailed MSC attaching images of the melted Products. Sunrise speculated to MSC that the Products had melted because the container had not had a functioning genset working for a prolonged period of time, and asked MSC for advice. At that time, the second container was still in the rail yard and needed to be picked up.

16. Sunrise emailed MSC again on July 12, 2021, after opening the second container and finding the Products melted and destroyed, and attached a video of the opening to its email.

17. Sunrise asked MSC for advice on how to dispose of the ruined Products, but Sunrise's Claims Handler, Cassidy Davidson, replied with a form email and did not offer any assistance in disposing of the Products that MSC had destroyed.

18. On July 12, 2021, Ms. Davidson informed Sunrise that MSC would send a surveyor to the site of the ruined Products. At a date approximately between July 12 and July 22, a surveyor retained by MSC visited Sunrise's facility and confirmed that the damage had taken place while the Products were in MSC's custody.

19. Upon information and belief, the damage to the Products while in MSC's custody was not caused by any act of Iberconsa.

20. MSC's surveyor recommended to Sunrise that Sunrise should not retain its own surveyor, as this surveyor had already confirmed the damage. On the advice of MSC, Sunrise did not retain a separate surveyor.

21. Because MSC refused to take responsibility for disposing of the Products it had ruined, Sunrise was forced to pay for shipping the Products to a landfill, where they were then disposed of, for a total of $10,205.59. A copy of the certificate of destruction and invoices for that destruction is attached as **Exhibit E**. This certificate was sent by email to MSC on July 22, 2021.

22. Also on July 22, 2022, Sunrise sent a claim letter to MSC detailing all damages it was aware of at that time that had been caused by MSC's destruction of the Products. A copy of the priced claim letter is attached as **Exhibit F**.

23. Sunrise inquired on July 28, 2021, and again on August 25, 2021, how long it would take for MSC to process Sunrise's claim. Ms. Davidson replied on August 25, 2021, noting that Sunrise's claim under the Bill of Lading had a one-year statute of limitation, and that the claims process could therefore take anywhere from three to twelve months to resolve.

24. On November 17, 2021, Sunrise asked again for the status of the claim. In a response sent that same day, Ms. Davidson stated that MSC was missing the invoice for destruction, despite the fact that she had confirmed receipt of that invoice earlier in the same email

thread, on July 22, 2021.  Ms. Davidson additionally stated for the first time that MSC required a survey report from Sunrise and any photos in the survey, despite the fact that MSC's own surveyor had instructed Sunrise not to conduct a survey, and despite the fact that Sunrise had already sent MSC many photos and a video.

25.     Sunrise responded that same day, reminding Ms. Davidson that MSC had acknowledged receipt of the destruction invoices and photographs, and that MSC had sent its own surveyor.  MSC did not ever indicate that this evidence was insufficient, and months passed of emails back and forth between the parties in which MSC asked for more time, and never objected to the evidence provided by Sunrise as insufficient.

26.     When it became clear that MSC would not compensate Sunrise without escalation, Sunrise retained counsel who sent a demand letter to MSC on April 22, 2022, outlining MSC's damages and demanding compensation pursuant to the Bill of Lading.  A copy of the demand letter is attached as **Exhibit G**.

27.     Sunrise's counsel and MSC exchanged communications for several months, but it became clear that MSC would not compensate Sunrise before the statute of limitations ran out in July 2022, necessitating this Complaint.

28.     As a result of MSC's destruction of the Products, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $169,833.43, which is calculated by combining the fair market value of the Products ($156,963.84), the amount paid by Sunrise to MSC for shipping the Products ($2,714.00), and the costs of disposal of the products ($10,205.59).  Sunrise additionally seeks lost profits and prejudgment interest.

**FIRST CLAIM FOR RELIEF**
**(Breach of United States Carriage of Goods by Sea Act, 46 U.S.C. § 30701)**

29.     Sunrise incorporates the foregoing paragraphs 1-28 as if set forth fully herein.

8

30. The Products were in good condition and fully intact at the time they were delivered from Iberconsa to MSC, as confirmed by the Bill of Lading issued by MSC.

31. The Bill of Lading expressly incorporates COGSA.

32. The Products were destroyed and became worthless while in the custody of MSC, such that they were destroyed by the time they were delivered by MSC to Sunrise.

33. Within three days of receipt of the Products from MSC, Sunrise gave notice to MSC of the damage, including photographs and video of the destroyed Products.

34. By reason of the foregoing, Sunrise has been damaged in an amount to be determined at trial, but in no event less than $169,833.43 plus damages, including but not limited to lost profits, disposal costs, trucking and handling costs, and prejudgment interest.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Sunrise Food Trading, Inc. respectfully requests that this Court enter judgment in favor of Sunrise and against MSC and award Sunrise:

(i) damages in an amount to be determined at trial, but in no event less than $169,833.43;

(ii) an award of lost profits and other damages;

(iii) all applicable fees and costs of this action, including attorneys' fees;

(iv) interest at the maximum statutory rate; and

(v) such other and further relief as this Court may deem just and proper.

Dated: New York, New York            COWAN, LIEBOWITZ & LATMAN, P.C
July 5, 2022

By: ___s/ Jeremy A. Berman_____
    Jeremy A. Berman
    Clarence J. Erickson
114 West 47th St.
New York, New York 10036
(212) 790-9274

jab@cll.com
cje@cll.com

*Attorney for Plaintiff*
*Sunrise Food Trading, Inc.*

32740/000/4089380.2